ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Thursday, June 21, 2018 4:07:10 PM
CASE NUMBER: 2018 CV 02840 Docket ID: 32326507
RUSSELL M JOSEPH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

**IN THE COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY, OHIO**
**GENERAL DIVISION (CIVIL)**

| | |
|---|---|
| **DOROTHY MITCHELL**<br>3032 Germantown Road<br>Dayton, Ohio 45417<br><br>Plaintiff,<br><br>-vs-<br><br>**CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY OF OREGON**<br>1900 Alameda De Las Pulgas<br>San Mateo, California 94403<br><br>Also Serve<br><br>c/o Statutory Agent<br>Registered Agent Solutions, Inc.<br>4568 Mayfield Road, Suite 204<br>Cleveland, Ohio 44121<br><br>Defendant. | Case No.: 2018 CV 02840<br><br>Judge: Mary Wiseman<br><br>**COMPLAINT – BREACH OF CONTRACT, BAD FAITH, UNJUST ENRICHMENT, AND DECLARATORY JUDGMENT WITH JURY DEMAND ENDORSED HEREON** |

**NOW COMES** Plaintiff, Dorothy Mitchell, by and through her undersigned counsel, and hereby states the following for her Complaint against Defendant:

**JURISDICTION AND VENUE**

1. Plaintiff, Dorothy Mitchell, is a black female who current resides at 3032 Germantown Road, Dayton, Montgomery County, Ohio. She is the owner of a single-family home located at 6177 Derby Road, Dayton, Montgomery County, Ohio ("the Derby Property").

2. Defendant, California Casualty General Insurance Company of Oregon (hereinafter referred to as "CALCAS"), is a multi-million-dollar company with a place of business in San Mateo, California. CALCAS is a wholly

1



owned subsidiary of the California Casualty Group and its insurance operations are managed by the California Casualty Management Company which has offices in Cincinnati, Ohio. CALCAS sells insurance products and conducts business in Montgomery County, Ohio.

3. On or after June 22, 2016, a windstorm loss occurred at the Derby Property.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

4. At the time of the windstorm loss and at all times relevant to this litigation, the Derby Property was owned by Plaintiff.

5. At the time of the windstorm loss and at all times relevant to this litigation, the Derby Property was insured through a policy of insurance ("the policy") issued by CALCAS (Policy No. 202 5467285). Plaintiff is the named insured under the aforesaid policy of insurance.

6. A copy of the CALCAS policy is attached hereto as Plaintiff's Exhibit 1.

7. The CALCAS policy is described as a "Homeowners" policy and includes up to $205,000 in "dwelling" coverage along with $20,500 in limits for "other structures" protection. The policy includes $102,500 in "personal property" protection as well as $61,500 in "loss of use" coverage. The policy has a $2,000 deductible for the above referenced coverages.

8. Plaintiff paid CALCAS $1,645 in annual premiums for the coverage provided by the policy to be operative from January 13, 2016 to January 13, 2017.

9. The windstorm loss, which occurred on or after June 22, 2016, and which

2

is covered under the policy, resulted in damage to the dwelling and its contents as well as the loss of use of the property. The windstorm loss caused damage totaling more than $25,000.00.

10. Plaintiff submitted a valid claim for the windstorm loss to the Derby Property and its contents to CALCAS. Similarly, the Plaintiff submitted a valid claim for loss of use for the property.

11. Aspects of the damages from the windstorm loss were photographed and documented during an underwriting inspection which occurred prior to July 26, 2016.

12. During that inspection, Ms. Mitchell was instructed to report the loss to CALCAS, which she did.

13. After Ms. Mitchell reported the loss, an inspection of the property occurred on either August 10 or August 11, 2016.

14. At that inspection, or before, CALCAS became aware of covered wind damage to the roof; that water was entering the home and that the structure including the custom carpeting and contents of the home were sustaining damage from the water entering. This was confirmed via letter dated August 15, 2016. A copy of that letter is attached as Exhibit 2.

15. In the aftermath of the inspection, CALCAS never made any effort to involve a water remediation company or dry out Ms. Mitchell's home despite its appreciation for the risks of water infiltration and knowledge that water had entered the home.

16. Instead, CALCAS' representative asked Ms. Mitchell to have the custom

carpet in the living room cleaned, which she did.

17. Rather, in a situation with CALCAS acknowledged open peril coverage for some damages and issued partial payment for same, shortly thereafter, CALCAS denied the contents damage based on the claim that the named peril coverage on the contents didn't apply; when in fact a windstorm was a named peril under Section I. B. 2. and water entering through an opening caused by a windstorm was as well.

18. While the term "opening" was not defined in the policy, it could reasonably include the gap caused by shingles being torn off or dislodged by wind or similar issues with flashing on the roof.

19. "Opening" does not reasonably require being able to "see the sky from the inside of the home" as a CALCAS representative told Ms. Mitchell.

20. CALCAS' August 15 letter fails to identify a valid basis to deny the dwelling or contents claim that was presented.

21. Two days after issuing the August 15 letter, CALCAS issued payment of $1,847.11, including a $2,000 deduction for the deductible applicable for damages in both kitchen/family room and bedroom under the dwelling coverage of the policy.

22. Despite denying in the August 15, 2016 letter that the contents were covered, CALCAS also requested a list of the damaged contents, which was then supplied by Ms. Mitchell.

23. On December 7, 2016, a portion of this list was paid, although at least two items from the list (full custom carpet replacement in the living room and

4

a corner kitchen cabinet) were not paid despite being admittedly covered under the open peril coverage and observed to have been damaged at the inspection.

24. During the time between the initial reporting and the payments, the severity of the mold contamination became clear.

25. Individuals in the home, including the custom carpet estimator and representatives of Ms. Mitchell's public adjuster were shocked by the conditions.

26. These observations, coupled with unreimbursed covered water damage, made the Derby Property unfit to live in and Ms. Mitchell moved out in the fall of 2016 and has not yet been able to return.

27. In December of 2016, Restoration One of Ohio was engaged at Ms. Mitchell's cost to evaluate the air quality in the home and determined that conditions were unhealthy. This information was provided to CALCAS.

28. Ms. Mitchell experienced significant health impacts from her exposure to the conditions in the house and provided medical documentation of those effects to CALCAS.

29. The findings of the mold report and Ms. Mitchell's health impacts were caused by CALCAS' unreasonable delay in responding appropriately after the initial inspection and delay or refusal to issue payment for covered items including the custom carpeting.

30. In early 2017, Ms. Mitchell's public adjuster submitted supplemental claims under the dwelling and contents coverages, as well as new claims

for loss of use and for payments under the fungi, wet or dry rot, and bacteria coverage.

31. Although on April 15, 2017, CALCAS paid $5,000 on the fungi coverage and refunded Ms. Mitchell's $2,000 deductible, no additional payments have been made.

32. Rather, the supplemental claims submission triggered a July 18, 2017, reservation of rights letter from CALCAS which for the first time asserted delays in reporting the claim and mitigating damages by Ms. Mitchell, among other items never mentioned in the August 15, 2016 letter. A copy of the July 18, 2017 letter is attached as Exhibit 3.

33. The July 18, 2017, letter also requested 10 different categories of new material CALCAS now claimed to need to evaluate the supplemental claim. Despite the fact that the supplemental claim was based upon the same event initially evaluated on August 10 or August 11, 2016.

34. At the same time, it requested this new information (which Ms. Mitchell supplied as best she could) to evaluate a claim that had existed and been allowed for nearly a year, CALCAS decided to open a new claim number (with the same loss date) for what was termed "kitchen damage" allegedly caused by a "trap leak" under the kitchen sink.

35. This new claim number for kitchen damage was created despite the fact that no mention of a trap leak was present in the August 15 letter and despite the kitchen cabinet being listed in the personal property inventory which generated the December 7th payment.

6

36.  The new "kitchen damage" claim is simply a still unpaid portion of the larger original claim.

37.  Contrary to the provisions of its policy as applied to the facts of this case, CALCAS has repeatedly refused to fully pay for the damage caused by the subject windstorm.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

38.  Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

39.  At all times pertinent hereto, CALCAS provided coverage for the windstorm loss which occurred on or after June 22, 2016, at the Derby Property.

40.  By virtue of its misleading, dilatory and unnecessary conduct during its investigation CALCAS has constructively denied proper coverage for and refuses to satisfy its contractual obligations with respect to paying for the loss in this case.

41.  CALCAS' decision to refuse to fulfill the contractual obligations constitutes a breach of the insurance contract between it and Plaintiff, Dorothy Mitchell.

42.  Consistent with the terms of the CALCAS policy, Plaintiff provided CALCAS with timely notice of the loss and otherwise complied with all relevant and applicable terms and conditions of the policy.

43.  CALCAS may have breached other policy provisions.

7

44. CALCAS' breach of contract directly and proximately caused damages to Plaintiff in an amount of at least $25,000.00.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendant CALCAS in an amount in excess of $25,000.00, including compensatory damages, prejudgment interest, attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Bad Faith)

45. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten herein.

46. The relationship between CALCAS and its insured, Dorothy Mitchell, mandates that CALCAS act in good faith with respect to the investigation, evaluation and handling of claims submitted by Plaintiff.

47. CALCAS has constructively refused to provide coverage and/or refuses to pay the fully amount owed pursuant to its contractual obligations with respect to the windstorm loss which occurred on or after June 22, 2016 at the Derby Property.

48. CALCAS acted in bad faith by declining to provide coverage and refusing to pay pursuant to the CALCAS policy at issue.

49. CALCAS acted in bad faith by stalling its investigation of this loss for going on 24 months.

50. CALCAS acted in bad faith by violating the letter and spirit of the Ohio Unfair Claims Settlement Practices Provisions of the Ohio Administrative Code.

8

51. CALCAS acted in bad faith by falsely representing that no coverage existed for the windstorm damage unless an inspector could "see the sky from the inside of the home."

52. CALCAS acted in bad faith by unreasonably failing to provide water remediation and dry out services in a timely manner so as not to permit mold and other toxic conditions to develop which made the Derby Property uninhabitable and proximately caused personal injury to Dorothy Mitchell.

53. CALCAS acted in bad faith by invoking false grounds for denial, requiring the creation of a separate claim number for what was fundamentally a part of the same claim and otherwise concealing and misrepresenting factual information from or about the insured as part of the denial of the claim.

54. CALCAS may have engaged in other acts of bad faith it its investigation, evaluation, or handling of this claim.

55. CALCAS had no lawful basis to delay payment or fail to provide coverage and/or refuse to pay the amounts of damage caused by the covered windstorm loss.

56. CALCAS had no reasonable justification for its delay in payment or refusal to pay and had no reasonable justification for its failure to determine whether its delay in payment or refusal to pay had no lawful basis.

57. CALCAS' bad faith with respect to the investigation, evaluation and handling of the claims submitted by Plaintiff directly and proximately caused damages to her in an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant CALCAS in an amount in excess of $25,000.00, including compensatory and punitive damages, prejudgment interest, attorney's fees and costs of this litigation.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

58. Plaintiff incorporates by reference here each and every preceding paragraph as if fully rewritten herein.

59. Plaintiff conferred a benefit upon CALCAS by paying her policy premiums for the Derby Property covered by the CALCAS policy.

60. CALCAS has retained the benefit which Plaintiff has conferred upon it by virtue of refusing to fully pay or underpaying the windstorm loss which occurred on or after June 22, 2016, and which was covered by CALCAS policy.

61. Under the circumstances, it would be unjust and inequitable for CALCAS to retain any value of such benefit without paying for it.

62. As a result, CALCAS owes Plaintiff an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant CALCAS in an amount in excess of $25,000.00, including compensatory damages, prejudgment interest, attorney's fees and costs of this litigation.

### FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

63. Plaintiff incorporates by reference here each and every preceding paragraph as if fully rewritten herein.

64. Pursuant to Ohio Revised Code § 2721.01 *et seq.* Plaintiff requests a

declaratory judgment from this Court with regard to the rights and obligations as between CALCAS and the Plaintiff with respect to CALCAS' Policy No. 202 5467285 as it pertains to coverage provided for the windstorm loss which occurred on or after June 22, 2016.

65. In particular, Plaintiff requests that this Court declare that the CALCAS policy provides coverage under the dwelling, contents and loss of use provisions of the policy to Plaintiff with respect to the windstorm loss at the Derby Property.

66. Plaintiff reserves the right to request further declarations of CALCAS' rights and obligations as appropriate.

67. Further, the Plaintiff requests this Court declare that CALCAS is obligated to pay to Plaintiff in excess of $25,000.00 plus attorney's fees and costs.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant CALCAS in an amount in excess of $25,000.00, including compensatory damages, prejudgment interest, attorney's fees and costs of this litigation.

Respectfully submitted,

/s/ P. Christian Nordstrom
P. Christian Nordstrom (#0065439)
GARVEY SHEARER NORDSTROM, PSC
2400 Chamber Center Drive, Suite 210
Ft. Mitchell, Kentucky 41017
Telephone: (859) 308-1490
Telefacsimile: (866) 675-3676
E-mail: pcnordstrom@gsn-law.com
Attorney for Plaintiff Dorothy Mitchell

## **JURY DEMAND**

Plaintiff hereby respectfully demands a trial by jury for each and every issue raised herein and throughout the course of this litigation.

/s/ P. Christian Nordstrom
P. Christian Nordstrom (0065439)

 **California Casualty**
P.O. BOX 39700 COLORADO SPRINGS CO 80949-9700

Important Insurance Documents Enclosed

202   5467285

# IROH0

MITCHELL, DOROTHY
6177 DERBY RD
DAYTON   OH   45417

 You could view this document online. Visit www.calcas.com today, and Go Paperless!

* Receive email alerts when you have new insurance documents
* Review policy transaction history online - anytime, anywhere
* View or print current and past insurance documents when you need them

## INSURANCE CHECKLIST

✓ Verify the information and coverages listed in the Policy Declarations and be sure the coverages meet your current needs.

✓ Retain the enclosed documents for your records.

 PLAINTIFF'S EXHIBIT

PAGE INTENTIONALLY LEFT BLANK

 **California Casualty**
Home Office: Portland, OR

For questions on your policy or to report a loss, call 1-800-346-6840. This document can be viewed at calcas.com/My-Account.

Coverage provided by: **CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY OF OREGON**

## HOMEOWNERS POLICY DECLARATIONS
## RENEWAL

Your policy is billed annually. Billing information will be mailed separately.

| NAMED INSURED(S): | POLICY NUMBER: | POLICY PERIOD: |
|---|---|---|
| MITCHELL, DOROTHY<br>6177 DERBY RD<br>DAYTON    OH 45417 | 202 5467285 | Effective 01/13/16 Expiration 01/13/17<br>12:01 A.M. Standard Time at the<br>location of the property insured |

**THE RESIDENCE PREMISES COVERED BY THIS POLICY IS LOCATED AT:**
6177 DERBY RD               DAYTON            OH 45417

**FIRST MORTGAGEE:**
LOAN # 0559020805
21ST MORTGAGE CORP
ISAOA/ATIMA
PO BOX 477
KNOXVILLE          TN 37901

**RATING INFORMATION:**
Automatic Value-Up at Renewal, Masonry, Primary Residence, Protection Class 05, Territory F5, 1445 Square Feet, 1 Family.

**DEDUCTIBLE:**
Section I Loss Deductible = $2,000
Coverage is provided only where a limit of liability is shown or a premium is stated.

| SECTION I PROPERTY | LIMIT OF LIABILITY | | PREMIUMS |
|---|---|---|---|
| Coverage A - Dwelling | $ 205,000 | | $ 1585.00 |
| Coverage B - Other Structures | $ 20,500 | | Included |
| Coverage C - Personal Property | $ 102,500 | | Included |
| Coverage D - Loss of Use | $ 61,500 | | Included |
| SECTION II LIABILITY | | | |
| Coverage E - Personal Liability | $ 300,000 | Each Occurrence | $ 23.00 |
| Coverage F - Medical Payments to Others | $ 3,000 | Each Person | Included |
| ADDITIONAL COVERAGES | | | |
| HO0420 Specified Additional Amount of Insurance for Coverage A - Dwelling | | | $ 37.00 |
| HO0427 Limited Fungi, Wet or Dry Rot, or Bacteria Coverage | | | Included |

| **TOTAL POLICY PREMIUM** | | | **$ 1,645.00** |

 California Casualty
Home Office: Portland, OR

For questions on your policy or to report a loss, call 1-800-346-6840. This document can be viewed at calcas.com/My-Account.

Coverage provided by: **CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY OF OREGON**

**The following discounted factors have been applied to your policy:**

Persistency (Loyalty) Rating
Age 55 and Retired Discount
Utility Rating Plan Discount
Roof Discount - Age
Home Alert Protection
   Central station smoke/fire and burglar alarms
Non-Smoker Discount

**Your Property policy consists of the Declarations and documents listed below. Please keep this information for your records.**

| | | |
|---|---|---|
| HC0099 | 1000 | Punitive Damages Exclusion |
| HC0288 | 1000 | Amendment of Section I & II Exclusions - War Exclusion |
| HC0298 | 0107 | Coverage Enhancements |
| HC0483 | 0114 | Exclusion of Cosmetic Damage to Roof Surfacing or Siding Coverings |
| HC0493 | 0114 | Actual Cash Value Loss Settlement Windstorm/Hail Losses to Roof Surfacing 10 or More Yrs of Age |
| HC0996 | 0802 | Inflation Cost Endorsement |
| HO0003 | 1000 | Homeowners 3 - Special Form |
| HO0134 | 0301 | Special Provisions - Ohio |
| HO0416 | 1000 | Premises Alarm or Fire Protection System |
| HO0496 | 1000 | No Section II Liability Coverages for Home Day Care Business-Limited Section I |
| HO0420 | 1000 | Specified Additional Amount of Insurance for Coverage A - Dwelling |
| | | Additional Amount of Insurance is 25% |
| | | 125% RCV |
| HO0427 | 0402 | Limited Fungi, Wet or Dry Rot, or Bacteria Coverage |
| | | Section I amount of coverage is $ 5000 |
| | | Section II aggregate sublimit of liability is $ 5000 |
| HO0490 | 1000 | Personal Property Replacement Cost Loss Settlement |
| CFRMSIG | 0612 | Policy Signature Page |

## HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

   c. Under Section II:

      (1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person in-

 Copyright, Insurance Services Office, Inc., 1999

cluded in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY COVERAGES

### A. Coverage A - Dwelling

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including srtuctures attached to the dwelling; and

b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

B. **Coverage B - Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

a. Land, including land on which the other structures are located;

b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

c. Other structures from which any "business" is conducted; or

d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

C. **Coverage C - Personal Property**

1. **Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does

not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

**j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

**k.** $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I - Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages; or

**k.** Water or steam.

**D. Coverage D - Loss Of Use**

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1. Additional Living Expense** and **2. Fair Rental Value** above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1. Additional Living Expense**, **2. Fair Rental Value** and **3. Civil Authority Prohibits Use** above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

a. We will pay your reasonable expense for the removal of:

   (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   (1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

   (3) Damage(s) a covered structure; or

   (4) Does not damage a covered structure, but:

      (a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

      (b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

   This coverage is additional insurance.

**2. Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

   (1) Increase the limit of liability that applies to the covered property; or

   (2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I - Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

 Copyright, Insurance Services Office, Inc., 1999

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

7. **Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the

property described above, regardless of the number of assessments.

   b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

   c. Paragraph P. Policy Period under Section I - Conditions does not apply to this coverage.

This coverage is additional insurance.

8. **Collapse**

   a. With respect to this Additional Coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

      (1) The Perils Insured Against named under Coverage C;

      (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renova-

tion if the collapse occurs during the course of the construction, remodeling or renovation.

   c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

   d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

   a. We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

      (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

      (2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

   c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

   We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

   **a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

   **c.** We do not cover:

      **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

      **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

   **1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

   **2.** We do not insure, however, for loss:

      **a.** Excluded under Section I - Exclusions;

      **b.** Involving collapse, except as provided in E.8. Collapse under Section I - Property Coverages; or

      **c.** Caused by:

         **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

            **(a)** Maintain heat in the building; or

            **(b)** Shut off the water supply and drain all systems and appliances of water.

         However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

         For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

         **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

            **(a)** Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I - Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do

not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in

the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

 Copyright, Insurance Services Office, Inc., 1999

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I - EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event

contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I - Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I - Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

A. **Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

B. **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

    a. Make reasonable and necessary repairs to protect the property; and

    b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

    a. Show the damaged property;

    b. Provide us with records and documents we request and permit us to make copies; and

    c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a. The time and cause of loss;

    b. The interests of all "insureds" and all others in the property involved and all liens on the property;

    c. Other insurance which may cover the loss;

    d. Changes in title or occupancy of the property during the term of the policy;

    e. Specifications of damaged buildings and detailed repair estimates;

    f. The inventory of damaged personal property described in **6.** above;

    g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

**C. Loss Settlement**

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I - Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

    a. Personal property;

    b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    c. Structures that are not buildings; and

    d. Grave markers, including mausoleums;

    at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

    a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1) The limit of liability under this policy that applies to the building;

        (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        (3) The necessary amount actually spent to repair or replace the damaged building.

        If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

    b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full re-

placement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

D. **Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

E. **Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

F. **Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

G. **Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

H. **Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I - Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or non-renewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II - LIABILITY COVERAGES

### A. Coverage E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is re-

quired by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any pre-arranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B.6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            (i) You declare them at policy inception; or

            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

         The coverages in (c) and (d) above apply for the policy period.

         Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Coverages E and F do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion E.2. does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage E - Personal Liability**

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II - Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. **Coverage F - Medical Payments To Others**

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

A. **Claim Expenses**

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. **First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. **Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded from coverage under Section II - Exclusions; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of a corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II - Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and the "named insured" shown in the Declarations;

b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

### D. Duties Of An Injured Person – Coverage F – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

### E. Payment Of Claim – Coverage F – Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

### F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

### G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

### H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

### I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

### J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph **C.** Damage To Property Of Others under Section II – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

 Copyright, Insurance Services Office, Inc., 1999

HOMEOWNERS
HC 00 99 10 00

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## PUNITIVE DAMAGES EXCLUSION

**SECTION II- EXCLUSIONS**
**Coverage E- Personal Liability**
**Coverage E** does not apply to:

A. Liability:
　1. For any award of punitive or exemplary damages, regardless of any other provision of this policy. However, this exclusion does not apply to:
　　a. Our duty to defend under Section II – Liability Coverages, Coverage E – Personal Liability.

All other provisions of this policy apply.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – OHIO

**SECTIONS II - EXCLUSIONS**

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

The following paragraph is added:

**9. Actions Of A Dangerous Or Vicious Dog**

"Bodily injury" or "Property damage" arising out of the actions of a dangerous or vicious dog, as defined under OHIO REV. CODE, Sec. 955.11, and the "insured's" failure to keep:

a. The dangerous dog, while on the premises of the owner, keeper or harborer, restrained by a leash or a tether;

b. The vicious dog while on the premises of the owner, keeper or harborer, securely confined at all times in a locked pen that has a top, a locked fenced yard or other locked enclosure that has a top; and

c. The dangerous and vicious dog while off the premises of the owner, keeper or harborer, on a chain-link leash or tether that is not more than six feet in length and in addition, keep the dog;

(1) Confined in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top;

(2) Leashed or tethered and controlled by a person who is of suitable age and discretion or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person; or

(3) Muzzled.

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**SECTIONS I AND II - CONDITIONS**

**C. Cancellation**

Paragraph 2. is deleted and replaced by the following:

2. We may cancel this policy, as stated below, by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

a. We may cancel at any time by letting you know at least 10 days before the date cancellation takes effect if we cancel because:

(1) You have not paid the premium;

(2) There has been a material misrepresentation of fact related to this insurance; or

(3) Evidence of arson exists.

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

All other provisions of this policy apply.

 Copyright, ISO Properties, Inc., 2001

HOMEOWNERS
HC 02 88 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF SECTION I & II EXCLUSIONS - WAR EXCLUSION

**SECTION I – EXCLUSIONS**

Exclusion **6. War** is deleted and replaced by the following:

  6. **War**, including the following and any consequence of any of the following:

     a. Undeclared war, civil war, insurrection, rebellion or revolution;

     b. Warlike act by a military force or military personnel; or

     c. Destruction, seizure or use for a military purpose.

     d. An act of war involving the use of weapons of mass destruction against persons or property, including but not limited to, the dispersal, release or escape of toxic or poisonous chemicals, disease producing agents, dangerous radiation, explosive incendiary or poison gas bombs, grenades, rockets or missiles, mines or similar devices.

  Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**SECTION II – EXCLUSIONS**

  **E. Coverage E – Personal Liability And Coverage F- Medical Payments to Others**

  Exclusion **5. War** is deleted and replaced by the following:

  5. **War** "Bodily Injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

     a. Undeclared war, civil war, insurrection, rebellion or revolution;

     b. Warlike act by a military force or military personnel; or

     c. Destruction, seizure or use for a military purpose.

     d. An act of war involving the use of weapons of mass destruction against persons or property, including but not limited to, the dispersal, release or escape of toxic or poisonous chemicals, disease producing agents, dangerous radiation, explosive incendiary or poison gas bombs, grenades, rockets or missiles, mines or similar devices.

  Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

All other provisions of this policy apply.

HOMEOWNERS
HC 02 96 08 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EDUCATORS ADVANTAGE ENDORSEMENT
## SPECIAL COVERAGE ENHANCEMENTS

### DEFINITIONS

The following definition is added when this endorsement is attached to the policy:

"School" means an early childhood, primary, secondary, undergraduate or graduate educational facility that is operating within the public school system or a private school licensed by the state in which it is located.

### SECTION I - PROPERTY COVERAGES

**COVERAGE C – Personal Property**

**Special Limits of Liability:**

The special limit of liability in Category **3.a.** is deleted and replaced by the following:

a. $200 on money, bank notes, bullion, gold other than goldware, or gold-plated ware, silver other than silverware, or silver-plated ware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards, except property subject to the Special Limit of Liability **(1)** below.

**(1) Fund Raising Monies or Goods**

$500 on fund-raising monies or goods in your care, custody and control while on "school" premises.

### ADDITIONAL COVERAGES

The following Additional Coverage is added:

**Educators Professional Equipment and Materials**

We will pay up to $3,000 on property used primarily for the "business purposes" of providing, enhancing or supplementing educational instruction within the course and scope of your employment by a "school";

providing the loss is caused by a Peril Insured Against in Coverage C – Personal Property.

The limit of $3,000 is the most we will pay in any one loss regardless of the number of "business" property items involved in the loss.

This coverage does not change the limit of liability for Coverage C – Personal Property. No deductible applies to this additional coverage.

All other provisions of this policy apply.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COVERAGE ENHANCEMENTS

**DEFINITIONS**

Definition **B.5.**, which defines "insured" is extended to include the following:

1. A student enrolled in school, who was a resident of your household before moving out to attend school, provided the student resides at the school; and is

   a. Your relative; or

   b. Is an other person under the age of 21 and in your care or the care of a relative who is a resident of your household.

2. With respect to the Special Limit of Liability provided by this endorsement, "computer equipment" means:

   a. Computer hardware, software, operating systems or networks; and

   b. Other electronic parts, equipment or systems solely designed for use with or connected to equipment in a. above.

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

3. **Special Limits of Liability**

   a. The Special Limit of Liability in Category **3.f.** that applies to loss by theft of firearms and related equipment is increased to $5,000.

   b. With respect to "computer equipment", as defined above, the Special Limit of Liability in Category **3.i.** that applies to "business" property away from the "residence premises" is increased to $3,000.

   The Special Limit of Liability in Category **3.i.** does not apply to;

   (1) Electronic apparatus and accessories described in Categories **3.j.** and **k.;**

   (2) "Computer equipment" that can be operated from the electrical system of a "motor vehicle" or watercraft and by other sources of power while the equipment is in or upon a "motor vehicle" or watercraft.

**COVERAGE D – Loss of Use**

The following is added:

1. The Section I deductible does not apply to any loss payments made for any coverage provided under Coverage D – Loss of Use.

**ADDITIONAL COVERAGES**

1. The amount we will pay under Additional Coverage 6. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money, is increased to $1000.

2. The following Additional Coverage is added:

   **Lost Luggage**

   a. We will pay up to $500 in any one incident, for loss of your luggage and personal property while in the care, custody or control of a commercial passenger carrier.

   You must submit a claim to the commercial passenger carrier within 30 days of loss. The coverage provided by this endorsement;

   (1) Is excess over any other insurance provided by the commercial carrier; and

   (2) Does not apply to loss of money, checks or money orders.

This Additional Coverage does not increase the limit of liability for **Coverage C – Personal Property.**

**SECTIONS I AND II – CONDITIONS**

The following condition is added:

**Conformity to Statute**

   If the provisions of this policy are in conflict with the statutes of the state in which the "residence premises" is located, the provisions are amended to conform to such statutes.

All other provisions of this policy apply.

HOMEOWNERS
HO 04 16 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

HOMEOWNERS
HC 04 83 01 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF COSMETIC DAMAGE TO ROOF SURFACING OR SIDING COVERINGS CAUSED BY WINDSTORM OR HAIL

**SECTION I – EXCLUSIONS**

The following exclusion is added:

**11. Cosmetic Damage**

Cosmetic damage means marring, pitting or other superficial damage caused by windstorm or hail that alters the appearance of roof surfacing or siding coverings but does not prevent the roof surfacing or siding coverings from functioning as a barrier to weather elements over an extended period of time.

Roof surfacing and siding coverings include the materials exposed to the weather, the underlayments applied for moisture protection and all flashing and edging.

This exclusion does not apply to loss caused by windstorm or hail that results in:

a. Damage that allows water to penetrate through the roof surfacing or siding coverings; or

b. The failure of the roof surfacing or siding coverings to perform their intended function as a barrier to weather elements over an extended period of time.

All other provisions of this policy apply.

HC 04 83 01 14 Page 1 of 1

HOMEOWNERS
HC 04 93 01 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACTUAL CASH VALUE LOSS SETTLEMENT WINDSTORM OR HAIL LOSSES TO ROOF SURFACING 10 OR MORE YEARS OF AGE

## DEFINITIONS

The following definition is added when this endorsement is attached to the policy:

"Roof surfacing" means the roofing material exposed to the weather, the underlayments applied for moisture protection, and all flashing and edging.

## SECTION I – CONDITIONS

This endorsement modifies the Section I – Loss Settlement Condition in the policy form with respect to a covered loss for "roof surfacing" and roof vents 10 or more years of age at the time of loss caused by the peril of windstorm or hail. The age of the majority of the "roof surfacing" square footage will determine the age of the "roof surfacing" at the time of loss regardless of the portion of the "roof surfacing" damaged by windstorm or hail.

Such loss will be subject to actual cash value loss settlement. Therefore, the loss settlement conditions that pertain to "repair or replacement cost without deduction for depreciation" are changed as noted below:

## C. Loss Settlement

1. In all Forms except HO 00 04 and HO 00 06 and the Special Loss Settlement Endorsement:

   a. Paragraph **1.c.** is replaced by the following:

      c. Structures that are not buildings, including their "roof surfacing" and roof vents 10 or more years of age at the time of loss; and

   b. The following is added to Paragraph **1.**:

      e. "Roof surfacing" and roof vents 10 or more years of age at the time of loss on structures that are buildings if a loss to the "roof surfacing" and roof vents is caused by the peril of windstorm or hail.;

c. In Paragraph **2.**, the introductory statement "Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following": is replaced by the following:

   2. Buildings covered under Coverage A or B, except for their "roof surfacing" and roof vents 10 or more years of age at the time of loss if the loss to the "roof surfacing" and roof vents 10 or more years of age at the time of loss is caused by the peril of windstorm or hail, at replacement cost without deduction for depreciation, subject to the following:

**Exception to the Actual Cash Value Loss Settlement for Windstorm or Hail Losses to Roof Surfacing 10 or more Years of Age**

We will disregard the actual cash value loss settlement provisions in this endorsement pertaining to "roof surfacing" and roof vents 10 or more years of age at the time of loss on structures that are buildings if:

a. There is a loss to the building covered under Coverage A – Dwelling caused by the peril of windstorm or hail; and

b. The total of the loss is equal to or exceeds the limit of liability for Coverage A - Dwelling shown in the Declarations.

All other provisions of this policy apply.

**HOMEOWNERS**
**HC 09 96 08 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**INFLATION COST ENDORSEMENT**

The limits of liability shown in the Declarations for Coverage **A** – Dwelling, Coverage **B** – Other Structures, Coverage **C** – Personal Property and Coverage **D** – Loss of Use shall be increased annually at the same rate as the increase in construction costs based upon reports of our current provider of construction cost index data. Payment of the renewal premium will constitute your acceptance of the revised limits of liability.

To determine the limits of liability on a particular date of loss, the latest available index will be divided by the index as of the effective date of this endorsement and the resulting factor multiplied by the limits of liability for Coverage **A**, Coverage **B**, Coverage **C** and Coverage **D** separately. For this purpose, the effective date of this endorsement is the later of either;

    a.   The policy effective date; or

    b.   The date of any amendment of the Coverage **A** amount made at your request.

All other provisions of this policy apply.

## POLICY SIGNATURE PAGE

IN WITNESS WHEREOF, this Company has executed and attested to these presents.


*Carl B. Brown*

Carl B. Brown
President & Chief Executive Officer
California Casualty Management Company, attorney-in-fact for California Casualty Indemnity Exchange
California Casualty Insurance Company
California Casualty General Insurance Company of Oregon
California Casualty & Fire Insurance Company


*James M. Sevey*

James M. Sevey
Secretary
California Casualty Management Company, attorney-in-fact for California Casualty Indemnity Exchange
California Casualty Insurance Company
California Casualty General Insurance Company of Oregon
California Casualty & Fire Insurance Company

CFRMSIG (03/07)

HOMEOWNERS
HO 04 20 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING

### FORMS HO 00 02 AND HO 00 03 AND HO 00 05 ONLY

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

**SCHEDULE\***

| |
|---|
| Additional Amount Of Insurance: |
| _____ % |
| The Additional Amount Of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above. |

| |
|---|
| \*   Entry may be left blank if shown elsewhere in this policy for this coverage. |

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A. If you have:

1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

   a. The property evaluations we make; and

   b. Any increases in inflation; and

2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

   The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

1. We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2. Section I - Condition C. Loss Settlement Paragraph 2. is deleted and replaced by Paragraphs 2., 3., and 4. as follows:

   2. The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

   a. The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

   b. The necessary amount actually spent to repair or replace the damaged building; or

   c. The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

   If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

   3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

   4. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1999

HOMEOWNERS
HO 04 27 04 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
## FOR USE WITH FORMS HO 00 03 AND HO 00 05

### SCHEDULE*

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|
| 1. Section I - Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| 2. Section II - Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| * Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**DEFINITIONS**

The following definition is added:

**"Fungi"**

    **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

    **b.** Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I - PROPERTY COVERAGES**

**E.** **Additional Coverages**

    Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

    **13. "Fungi", Wet Or Dry Rot, Or Bacteria**

      **a.** The amount shown in the Schedule above is the most we will pay for:

        **(1)** The total of all loss payable under Section I - Property Coverages caused by "fungi", wet or dry rot, or bacteria;

        **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I - Property Coverages;

        **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

        **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

      **b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after. the time the Peril Insured Against occurred.

      **c.** The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

        **(1)** Number of locations insured under this endorsement; or

        **(2)** Number of claims-made. .

      **d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

Uniform Information Services, Inc.

## SECTION I - PERILS INSURED AGAINST

In Form HO 00 03:

A. **Coverage A - Dwelling And Coverage B - Other Structures**

Paragraph **2.c.(5)** is deleted and replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

B. **Coverage C - Personal Property**

12. **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is deleted and replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 05:

A. Under Coverages A, B and C:

Paragraph **2.d.** is deleted and replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

## SECTION I - EXCLUSIONS

Exclusion **A.10.** is added.

10. **"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I - CONDITIONS

Condition **P. Policy Period** is deleted and replaced by the following:

P. **Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II - CONDITIONS

Condition **A. Limit Of Liability** is deleted and replaced by the following:

A. **Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II - Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1.  Number of locations insured under the policy to which this endorsement is attached;

2.  Number of persons injured;

3.  Number of persons whose property is damaged;

4.  Number of "insureds"; or

5.  Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in A. Limit Of Liability of this endorsement, Condition B. **Severability Of Insurance** is deleted and replaced by the following:

B.  **Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II - Conditions, A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

Copyright, ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL PROPERTY REPLACEMENT COST
## LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in A.2.a. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1999

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

## NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

A. "Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

2. Any other activity engaged in for money or other compensation, except the following:

   a. One or more activities:

      (1) Not described in b. through d. below; and

      (2) For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

   b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   d. The rendering of home day care services to a relative of an "insured".

B. If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

C. If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and

2. From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

   the home day care service and other activity will be considered a "business".

D. With respect to C. above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in A.2. above, and

2. Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

E. With respect to A. through D. above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

   a. Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II - Exclusions;

   b. Coverage, under Section I, for other structures from which any "business" is conducted; and

2. Limits Section I coverage, under Coverage C - Special Limits of Liability, for "business" property:

   a. On the "residence premises" for the home day care "business" to $2,500. This is because Category h. (e. in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

   b. Away from the "residence premises" for the home day care "business" to $500. This is because Category i. (f. in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category i. does not apply to property described in Categories j. and k. (g. and h. respectively in Form HO 00 08).

**California Casualty**

PO Box 29171
Shawnee Mission, KS 66201-9171

08/15/16

MITCHELL, DOROTHY
6177 DERBY RD
DAYTON OH 45417

OUR POLICYHOLDER:      MITCHELL, DOROTHY
OUR POLICY/CLAIM NO.   202 5467285/50000357343
DATE OF LOSS:          06/22/16
INSURER:               California Casualty General Ins. Co. of Oregon
RELATED TO:            Contents – Water Damage

Dear Mrs. Mitchell,

This letter will serve as follow-up to my inspection of your home on August 11, 2016 and our subsequent conversation at the inspection.

Our inspection of the roof did find some wind and/or animal damage to a small section of roof shingles at the rear of the home. Water appears to be leaking in around your chimney flashing. We found no opening(s) on your roof created by wind or hail.

Your HO3 policy provides open peril coverage on the dwelling and named peril coverage on your contents. In other words, if damage suffered to a contents item is not the result of a named peril, there is no coverage under the policy for that item. As the water damage to your television and clothing was the result of a roof leak, and there was no opening in the roof created by either wind or hail, there is, unfortunately, no way to pay for the water damage they suffered.

Regretfully, we will not be able to tender payment for the damage to your television and clothing.

Your HO003 100100 policy contains the following relevant exclusions, exceptions, and conditions:

C. Coverage C – Personal Property
  1. Covered Property
     We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:
     a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or
     b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

     B. Coverage C – Personal Property
     We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions,

PLAINTIFF'S EXHIBIT Z

1. Fire Or Lightning
2. Windstorm Or Hail

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. Explosion
4. Riot Or Civil Commotion
5. Aircraft

   This peril includes self-propelled missiles and spacecraft.

6. Vehicles
7. Smoke

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism Or Malicious Mischief
9. Theft

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

      (4) That occurs off the "residence premises" of:

         (a) Trailers, semitrailers and campers;

         (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

         (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. Falling Objects

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight Of Ice, Snow Or Sleet

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. Accidental Discharge Or Overflow Of Water Or Steam

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

       (1) To the system or appliance from which the water or steam escaped;

     (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

     (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

     (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

  c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

  d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. Freezing

  a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

     (1) Maintain heat in the building; or

     (2) Shut off the water supply and drain all systems and appliances of water.

     However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.


## SECTION I – CONDITIONS:

### 8. Suit Against Us.

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Your receipt and acknowledgement of this notice shall not be considered a waiver of your rights under the policy, nor deprive you of any rights that you may have against the company. This letter is not intended to express all of the various bases upon which coverage may be denied. Failure of California Casualty to set forth any bases other than what is contained in this letter does not constitute a waiver by California Casualty of any defense.

We are sorry to advise you that because that for the reasons set forth above, we will not be able to provide payment for the contents portion of your loss.

If you have any additional information regarding this claim that may alter our denial posture, please call me to discuss further.  If you have any questions or wish to discuss this further, please feel free to contact me at the number listed below.

Sincerely,

DOUG ROBINSON
Field Adjuster
614-754-6694
drobinson@calcas.com or
myclaim@calcas.com
Fax: 800-229-3094

cc:

PL-551  (03/07)

 California Casualty

M-22

P.O. Box 29171
Shawnee Mission, KS 66201-9171

(800) 346-6840
myclaim@calcas.com

July 18, 2017

**Certified Mail-Return Receipt Requested
Personal and Confidential**

**RESERVATION OF RIGHTS**

Metro Public Adjustment
Attn: William Underkoffler
3551 Bristol Pike
Bensalem, PA 19020

Dorothy Mitchell
6177 Derby Rd
Dayton, OH 45417

RE:   OUR INSURED:     Dorothy Mitchell
       YOUR POLICY NO:  202 5467285
       CLAIM NO:        50000357343
       DATE OF LOSS:    6-22-16
       INSURER:         California Casualty Indemnity Exchange

Dear Ms. Mitchell:

We are writing to acknowledge receipt of documentation you sent us concerning your Additional Living Expense (ALE) and damaged Personal Property claims associated with the above-captioned loss. We have questions about these additional claims which require further investigation. This additional and ongoing investigation is conducted under a full Reservation of Rights, and we seek your assistance in the completion of this further investigation and documentation of your claims.

As you know, we have already paid for your initial claim of interior damages and personal property claim arising from the June 22, 2016 event. Your new presentation of additional damages including roof replacement and additional personal property damage has necessitated this further investigation.



**California Casualty Management Company**
Attorney-In-Fact and Manager

California Casualty Indemnity Exchange    California Casualty Insurance Company    California Casualty & Fire Insurance Company
California Casualty General Insurance Company of Oregon    California Casualty Compensation Insurance Company

SE-900-KSC-CLM

Page 2
Dorothy Mitchell
Claim# 50000357343

No action taken to date, nor any action this Company might take in the future, to investigate the cause of loss, determine the amount of loss or damage, attempt to adjust any claim arising out of the alleged loss, explore settlement, or defend a lawsuit arising out of the above-captioned claim, shall be deemed to be an admission of coverage under the policy issued to you. The investigation of this matter is being conducted with a full and complete Reservation of all Rights afforded us under the policy of insurance issued to you and without waiving any rights to deny coverage in the future.

The content of this letter is based on the information currently in your claim file. It is subject to evaluation and changes should new facts, documentation, or allegations be revealed.
We are requesting your in-person recorded statement, as well as financial documentation confirming payment for repairs to your home and your additional living expenses to date.

As you know California Casualty Indemnity Exchange (hereinafter California Casualty) has previously paid you for similar water damage claims that occurred on June 17, 2011 and December 5, 2011. We are requesting that you provide documentation that the recommended interior and chimney flashing repairs were completed as part of our ongoing investigation of your June 22, 2016 claim.

Your delay in reporting this loss by a month and failure to mitigate your damages and make reasonable and necessary repairs timely may have contributed to additional damages occurring to the home (mold) and to your claimed damaged personal property.

We are requesting that you provide documentation/evidence of completed repairs of the chimney flashing from your June 17, 2011 roof claim. Lack of timely or incomplete repair from the June 2011 loss may have led to or contributed to the extent of additional water damage reported in December, 2011 and possibly again in June, 2016.

As such, certain exclusions of your policy may apply to all aspects of your claim to include the interior drywall, mold, additional living expenses, and your personal property. Please be advised that all further settlement discussions for Coverage A- (Structure), Coverage C (Contents) and Coverage D –(Additional Living Expenses) or any other coverage pursuant to which claims have been made will be on hold pending the outcome of our investigation.

We will contact your public adjuster Bill Underkoff to schedule the interview in the next few days. Failure to comply with our request for your in-person recorded statement and production of additional documentation may require that California Casualty obtain your Examination

Page 3
Dorothy Mitchell
Claim# 50000357343

Under Oath (EUO) as part of our investigation. This is a formal proceeding wherein you will be asked questions under oath relative to the circumstances surrounding this loss. This proceeding will be conducted pursuant to the Terms and Conditions of your policy. You have the right to be represented by counsel of your choice, at your own expense, during the Examinations Under Oath. If we need your EUO our local attorney will contact you to schedule it.

To assist us with the investigation of this claim, please provide the following documents as soon as possible:

1. Proof of recommended repairs to the interior and structure of your home for the June 22, 2016. This request includes a copy of the service agreements for the roof repairs and interior water damage repairs, a copy of the paid receipt, and proof of payment for same.
2. Documentation confirming when you completed the necessary water mitigation services to the structure (drywall) and carpet after you discovered the June 22, 2016 loss.
3. Cleaning or repair receipts for the claimed damage personal property. If a contractor informed you that the items could not be cleaned or restored, please provide documentation confirming same.
4. Documentation confirming when the recommended mold remediation was completed for the June 22, 2016 loss. Please provide us with the copy of the paid invoice and proof of payment for same.
5. Proof of repairs for the December 5, 2011 interior water damages to your living room ceiling, walls and carpet. We also recommended replacement to the chimney flashing as part of the repair process and need confirmation of when this was done.
6. Proof of repairs for water damages to your master bedroom, master bedroom closet and master bath that occurred from a hail storm on June 17, 2011.
7. Proof of ownership and damages for the claimed personal property listed on your recently submitted revised inventory sheet. If the items are still available for inspection, please let us know as we want to inspect them.
8. Documentation confirming your home was uninhabitable due to the June 22, 2016 water damages claim.
9. A copy of your bank or credit card statements reflecting payments for the above mentioned repairs to your home from the June 22, 2016, December 5, 2011 and June 17, 2011 losses as well as the recently claimed Additional Living Expenses.
10. Send any other documents that you believe would assist us further with the investigation of your June 22, 2016 claim.

Page 4
Dorothy Mitchell
Claim# 50000357343

Your failure to timely comply with this request could delay the processing of your claim.

Specifically, we call your attention to the follow excerpts from the insurance policy language which may be applicable and upon which we reserve all rights to rely:

\*\*\*

## HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**
We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**
A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

5. "Insured" means:
    a. You and residents of your household who are:
      (1) Your relatives; or
      (2) Other persons under the age of 21 and in the care of any person named above;

    b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:
      (1) 24 and your relative; or
      (2) 21 and in your care or the care of a person described in a. (1) above; or

6. "Insured location" means:
    a. The "residence premises";
    b. The part of other premises, other structures and grounds used by you as a residence; and

## SECTION I – PROPERTY COVERAGES

A. Coverage A – Dwelling
    1. We cover:
      a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

Page 5
Dorothy Mitchell
Claim# 50000357343

    b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

## C. Coverage C – Personal Property

### 1. Covered Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

## D. Coverage D – Loss Of Use

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## SECTION I – PERILS INSURED AGAINST

### A. Coverage A – Dwelling And Coverage B – Other Structures

1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
    a. Excluded under Section I – Exclusions;
    c. Caused by:

        (6) Any of the following:

Page 6
Dorothy Mitchell
Claim# 50000357343

    (a) Wear and tear, marring, deterioration;

    (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

    (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    5. Neglect

    Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

    8. Intentional Loss

    Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

    In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

    2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    3. Faulty, inadequate or defective:

        a. Planning, zoning, development, surveying, siting;

        b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        c. Materials used in repair, construction, renovation or remodeling; or

        d. Maintenance;

    of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

Page 7
Dorothy Mitchell
Claim# 50000357343

## B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

4. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged personal property described in 6. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

Page 8
Dorothy Mitchell
Claim# 50000357343

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;
   relating to this insurance.

Please send the above requested documents in the enclosed self-addressed and stamped envelope at your earliest opportunity. The length of time that it takes to investigate your claim will depend on how quickly you respond to our requests.

As you know California Casualty issued payment on April 17, 2017 to you in the amount of $5000 to pay toward the mold damages you are claiming that were as a result of the June 22, 2016 loss. This amount represents the policy limit maximum provided by the Limited Fungi, wet or dry rot, or bacteria coverage Endorsement attached to your policy. The endorsement number is HO 04 27 04 02. If the cost to remediate the mold damages to your home or your personal property exceeds $5,000 you will be responsible for that portion.

We have previously provided you and your public adjuster with a copy of your Homeowner Policy, but if you need another, please let us know and we will send it to you.

Please note that neither the writing of this letter, nor any actions taken by California Casualty and/or any of its authorized representatives shall constitute or be deemed to be a waiver of, or an

Page 9
Dorothy Mitchell
Claim# 50000357343

estoppel to assert, any and all of the rights and defenses California Casualty may have or which may arise under the policy, the relevant facts presently known or discovered hereafter, the claimed loss or under any applicable law.

If you should have any questions or concerns, please contact me at 602-866-4806

Sincerely,

Charles Katek

Charles Katek, CPCU
Claim Team Manager
California Casualty Management Co.
myclaim@calcas.com

-----PAGE INTENTIONALLY LEFT BLANK-----



CERTIFIED MAIL

9414 7266 9904 2124 2116 49

RUSSELL M. JOSEPH
CLERK OF COURTS
MONTGOMERY COUNTY COURTS BUILDING
CIVIL DEPARTMENT
41 N. PERRY ST.
DAYTON, OHIO 45422-2130

2018 CV 02040
9 414 7266 9904 2124 2116 49

CALIFORNIA CASUALTY GENERAL
CO STATUTORY AGENT REGISTERED A
4568 MAYFIELD ROAD
SUITE 204
CLEVELAND, OH 44121